IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROLFIE FOBBS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:24-cv-11682 |
| | ) | |
| THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**PRELIMINARY STATEMENT**

1. Plaintiff ROLFIE FOBBS, hereinafter referred to as "Plaintiff," brings this ERISA action against the Defendant THE LINCOLN NATIONAL LIFE INSURANCE COMPANY Group Welfare Benefits Plan, in its capacity as Administrator of the Cannon Cochran Management Services, Inc. (Cannon Cochran) Long Term Disability Plan, hereinafter referred to as "Defendant." Plaintiff brings this action to secure all disability benefits, whether they be described as short-term, long-term and/or waiver of premium claims to which Plaintiff is entitled under a disability insurance policy underwritten and administered by Defendant. Plaintiff is covered under the policy by virtue of her employment with Cannon Cochran.

**PARTIES**

2. Plaintiff is a citizen and resident of Carrollton, Texas.

3. Defendant is a properly organized business entity doing business in the

State of Illinois.

4. The disability plan at issue in the case at bar was funded and administered by Defendant.

5. Defendant is a business entity doing business in the Northern District of Illinois. Defendant may be served with process by serving its registered agent, Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

**JURISDICTION AND VENUE**

6. This court has jurisdiction to hear this claim pursuant to 29 U.S.C. § 1132(a), (e), (f), and (g) of the Employee Retirement Security Act of 1974, 29 U.S.C. § 1101, et seq. ("ERISA") and 28 U.S.C. § 1331, as this action involves a federal question. Specifically, Plaintiff brings this action to enforce her rights under section 502(a)(1)(B) of the Employee Retirement Income Security Act, (ERISA), which provides "[a] civil action may be brought . . . (1) by a participant or by a beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

7. Venue in the Northern District of Illinois is proper by virtue of Defendant doing business in the Northern District of Illinois. Under the ERISA statute, venue is proper "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). Therefore, venue may also be proper under the third prong of ERISA's venue provision, specifically "where a defendant resides or may be found." (*Id.*) "District courts within the Fifth Circuit have adopted the reasoning outlined by the Ninth Circuit in *Varsic v. United States District Court for the Central District of California*, 607 F.2d 245 (9th Cir. 1979). See *Sanders v.*

*State Street Bank and Trust Company*, 813 F. Supp. 529, 533 (S.D. Tex. 1993). The Ninth Circuit, in *Varsic*, concluded that whether a defendant "resides or may be found" in a jurisdiction, for ERISA venue purposes, is coextensive with whether a court possesses personal jurisdiction over the defendant. *Varsic*, 607 F.2d at 248." See *Frost v. ReliOn, Inc.*, 2007 U.S. Dist. LEXIS 17646, 5-6 (N.D. Tex. Mar. 2, 2007). Under ERISA's nationwide service of process provision, a district court may exercise personal jurisdiction over the defendant if it determines that the defendant has sufficient ties to the United States. See *Bellaire General Hospital v. Blue Cross Blue Shield of Michigan,* 97 F.3d 822, 825-26 (5th Cir. 1996), citing *Busch v. Buchman, Buchman & O'Brien, Law Firm,* 11 F.3d 1255, 1258 (5th Cir. 1994). Here, Defendant is "found" within the Northern District of Illinois, as it does business here, and the court has personal jurisdiction over Defendant, as it has sufficient ties to the United States.

**<u>CONTRACTUAL AND FIDUCIARY RELATIONSHIP</u>**

8. At all relevant times, Plaintiff has been a participant within the meaning of Section 3(7) of ERISA, 29 U.S.C. § 1002(7), in the Long-Term Disability Plan Policy No. 000010026834.

9. Plaintiff obtained the disability policy at issue by virtue of Plaintiff's employment with Cannon Cochran, with coverage beginning on September 1, 2003.

10. Said policy became effective September 1, 2003.

11. At all relevant times, Defendant has been the claims administrator of the disability policy within the meaning of Section 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A).

12. At all relevant times, Defendant has been a fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

13. Defendant has a fiduciary obligation to administer the Plan fairly and to furnish disability benefits according to the terms of the Plan.

14. Finally, under its fiduciary duty, Defendant is required to take active steps to reduce bias and ensure claims are conducted in a manner that is consistent with the interests of the claimant.

15. Disability benefits under the Plan have been insured in accordance and pursuant to Policy No. 000010026834 issued by Defendant.

16. Under the terms of the policy, Defendant administered the Plan and retained the sole authority to grant or deny benefits to applicants.

17. Because Defendant both funds the Plan benefits and retains the sole authority to grant or deny benefits, Defendant has an inherent conflict of interest.

18. Because of the conflict of interest described above, this Court should consider Defendant's decision to deny disability benefits as an important factor during its review in determining Defendant's wrongful denial of benefits.

## STANDARD OF REVIEW

19. In order for the Plan Administrator's decisions to be reviewed by this Court under an "arbitrary and capricious" standard, the Plan must properly give the Plan Administrator "discretion" to make said decisions within the plain language in the Plan.

20. Except as stated in paragraph 21 below, benefit denials governed under ERISA are generally reviewed by the courts under a *de novo* standard of review.

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989).

21. In order for the Plan Administrator's decisions to be reviewed by this Court under an "arbitrary and capricious" standard and not a "de novo" standard, the Plan must properly give the Plan Administrator "discretion" to make said decisions within the plain language in the Plan.

22. Plaintiff contends that the Plan fails to properly give Defendant discretion under the Policy.

23. Further, when a Defendant violates the Department of Labor regulations, Defendant effectively forfeits its discretionary authority.

24. When denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503–1, will result in that claim being reviewed de novo in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent *and* harmless. *Halo v. Yale Health Plan, Dir. Of Benefits & Records Yale Univ*., 819 F. 3d 42 (2nd Cir. 2016). See also *Fessenden v. Reliance Standard Life Ins. Co*., 927 F.3d 998, 1001-02 (7th Cir. 2019) and *Slane v. Reliance Stand. Life Ins. Co*., CV 20-3250, 2021 WL 1401761 (E.D. La. Apr. 14, 2021).

25. Defendant committed the following violations demonstrating its failure furnish a full and provide review:

i. Inadequate notice of reasons for denial. 29 C.F.R. § 2560.503-1(g)(1)(i);
ii. Inadequate notice of the information needed to perfect Plaintiff's appeal. 29 C.F.R. § 2560.503-1(g)(1)(iii);
iii. Failure to follow Defendant's own claims procedures 29 C.F.R. §

2560.503-1(b);

iv. Failure to adopt guidelines to ensure that similarly situated claims are administered correctly and consistently. 29 C.F.R. § 2560.503-1(b)(5);

v. Failure to administrative Plaintiff's claim consistently 29 C.F.R. § 2560.503-1(b)(5);

vi. Failure to provide requested relevant documents timely. 29 C.F.R. § 2560.503-1(h)(2)(iii);

vii. Failure to describe the guidelines and protocols relied upon. 29 C.F.R. § 2560.503-1(g)(1)(v) and 29 C.F.R. § 2560.503-1(j)(5);

viii. Failure to obtain the review of appropriate medical professional. 29 C.F.R. § 2560.503-1(h)(3)(iii);

ix. Failure to obtain an appeal review of a different non-subordinate medical professional. 29 C.F.R. § 2560.503-1(h)(3)(v);

x. Failure to obtain an appeal review that does not defer to the prior determination. 29 C.F.R. § 2560.503-1(h)(3)(iii);

xi. Failure to obtain an appeal review that is conducted by a different non-subordinate individual. 29 C.F.R. § 2560.503-1(h)(3)(iii);

xii. Failure to give a claimant an opportunity to review and refute the report of a reviewing physician obtained during the appeal review. 29 C.F.R. § 2560.503-1(h)(4);

xiii. Failure to take into account all comments, documents, records, and other information submitted to the claimant or by the claimant relating to the claim. 29 C.F.R. § 2560.503-1(h)(2)(iv).

26. Defendant's violations of the regulations were not inadvertent or harmless.

27. Plaintiff contends that because Defendant failed to furnish a full and fair review, Defendant has relinquished its discretionary authority under the Plan.

28. Further, Defendant has a fiduciary obligation to administer the Plan fairly and to furnish disability benefits according to the terms of the Plan.

29. In Illinois, for disability insurance policies, certificates or riders offered, issued, renewed or delivered on or after February 1, 2011 said "discretionary clauses" are prohibited under Ill. Admin Code tit. 50 § 2001.3 (2005).

30. Further, for disability insurance policies issued prior to February 1, 2011, that do not contain a renewal date, said discretionary clause prohibition applies after June

1, 2011, upon any rate increase or any change, modification, or amendments on or after June 1, 2011.

31. Plaintiff contends that the Plan fails to give Defendant said discretion as said discretionary language is prohibited under Ill. Admin Code tit. 50 § 2001.3 (2005).

32. In *Fontaine v Metropolitan Life Ins. Co.,* the 7th Circuit held "that such state laws prohibiting discretionary clauses in insurance contracts are not preempted by ERISA" See, *Fontaine v Metropolitan Life Ins. Co,* No. 14-1984 (7th Cir. 2015)(citing *Standard Ins. Co. v. Morrison*, 584 F.3d 837 (9th Cir. 2009); *American Council of Life Insurers v. Ross*, 558 F.3d 600 (6th Cir. 2009).

33. ERISA does not preempt state bans on discretionary clauses because of the "savings clause." ERISA preempts "any and all State laws insofar as they … relate to any employee benefit plan." The "savings clause," however, preserves "any law … which regulates insurance…". To fall within the savings clause, a state law must: Be "specifically directed toward entities engaged in insurance" and "substantially affect the risk pooling arrangement between the insurer and the insured." *Kentucky Association of Health Plans, Inc. v. Miller*, 538 U.S. 329, 342 (2003).

34. Defendant's discretionary ban is therefore not preempted by ERISA, and the Standard of Review for the Court in reviewing this action is de novo.

**ADMINISTRATIVE APPEAL**

35. Plaintiff is a 64-year-old woman previously employed by Cannon Cochran as a "Senior Claims Examiner."

36. Senior Claims Examiner is classified under the Dictionary of Occupational

Titles as having a Light exertional level. This occupation also has an SVP of 6 and is skilled work.

37. This occupation was very demanding in that it required Plaintiff to investigate, evaluate and adjust workers' compensation claims using established claim handling standards and laws; establish reserves and/or provide reserve recommendations within established reserve authority levels; review, approve or provide oversight of medical, legal, damage estimates and other invoices to determine if reasonable and related to designated claims and negotiate disputed bills or invoices for resolution; authorize and make payments of workers' compensation claims in accordance with claim procedures using a claim payment program; negotiate settlements in accordance with established client-specific instructions and state laws; assess and monitor subrogation claims for resolution; prepare reports on claim status, payments and reserves; provide notices on qualifying claims to excess/reinsurance carriers; conduct claim reviews and/or training sessions for clients; and attend and participate at hearings, mediations, and informal legal conferences as appropriate.

38. Due to Plaintiff's disabling conditions, Plaintiff ceased actively working on January 19, 2022.

39. Plaintiff alleges that she became disabled on January 27, 2022.

40. Plaintiff filed for short-term disability benefits with Defendant.

41. Short-term disability benefits were granted.

42. Plaintiff filed for long-term disability benefits through the Plan administered by the Defendant.

43. The Plan defines "**Total Disability**" or "**Totally Disabled**" as follows:

*"**Total Disability**" or "**Totally Disabled**" will be defined as follows:*

*1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the main duties of his or her regular occupation.*

*2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee in unable to perform each of the main duties of any gainful occupation which his or her training, education or experience will reasonably allow.*

*The loss of a professional license, an occupational license or certification, or a driver's license for any reason does **not**, by itself, constitute Total Disability*."

44. The Plan defines "**Regular Occupation** or **Own Occupation**" as follows:

"**Regular Occupation**" or "***Own Occupation***" *means the occupation, trade or profession:*

*1. in which the Insured Employee was employed with the Employer prior to Disability; and*

*2. which was his or her primary source of earned income prior to Disability.*

*It includes any work in the same occupation for pay or profit; whether such work is with the Employer, with some other firm or on a self-employed basis. It includes the main duties of that occupation as performed in the national workforce; **not** as performed for a certain firm or at a certain work site*."

45. Long-term disability benefits were denied.

46. The Plan provides for monthly benefits of $3,825.00.

47. On October 17, 2022 and June 22, 2023, Defendant denied Plaintiff's long-term disability benefits.

48. Defendant's denial letters said Plaintiff was not totally disabled from performing her own occupation under the Own/Any Occupation definition and allowed Plaintiff 180 days to appeal this decision.

49. Defendant's denial letters failed to consider Plaintiff's restrictions, limitations, and inability to perform necessary vocational requirements of her own or any

occupation related to her medical conditions.

50. Defendant's denial letters failed to state what specific information was missing and/or necessary for Plaintiff to perfect her appeals. On this front, Defendant's letters state only that, "There is insufficient evidence to support impairment and the review concluded there is no functional impairment from your client performing her own occupation beyond the 180-day elimination period."

51. On April 5, 2023, June 15, 2023, December 7, 2023, February 15, 2024, and again on April 16, 2024, Plaintiff pursued her administrative remedies set forth in the Plan by requesting administrative reviews of the denial of benefits.

52. Plaintiff timely perfected her administrative appeals pursuant to the Plan by sending letters requesting same to the Defendant.

53. Plaintiff submitted additional information including medical records to show that she is totally disabled from the performance of both her own and any other occupation as defined by the terms of the Plan.

54. On or about October 3, 2022, Defendant's paid consultant, Keren McCarthy, DO, internal medicine, performed a peer review of Plaintiff's claim file.

55. On or about May 4, 2023, Defendant's paid consultant, Aton Holzer, M.D., dermatology, performed a peer review of Plaintiff's claim file.

56. On or about May 11, 2023, Defendant's internal consultant, Angelle Nash, CRC, MHS, LRC, vocational consultant II, performed a paper review of Plaintiff's claim file.

57. Defendant's peer reviews of Plaintiff's file are unreliable and unreasonable

as a basis for denial because:

a. The reviewers' opinions were infected by conflict and bias;

b. The reviewers' conclusions lack foundation and are conclusory;

c. The reviewers failed to consider the degenerative nature of Plaintiff's condition(s) and the lack of significant improvement;

d. The reviewers lacked appropriate qualifications to comment on Plaintiff's conditions;

e. The reviewers never examined Plaintiff in-person, which is particularly relevant, given the complexity of Plaintiff's conditions and treatment;

f. The reviewers failed to consider all relevant information, including Plaintiff's relevant own occupational demands;

g. The reviewers failed to acknowledge that medications neither effectively resolved her pain nor were appropriate for long-term treatment of Plaintiff;

h. The reviewers based their opinions on summary reports of other underqualified opinions; and

i. The reviewers' conclusions were inconsistent with the weight of the evidence.

58. There is an indication that a "Amy M., RN, CCM" nurse disability consultant, reviewed Plaintiff's claim file, but Defendant failed to provide Plaintiff with said review.

59. Defendant's consultants completed their reports without examining Plaintiff.

60. Defendant notified Plaintiff that Defendant upheld its original decision to deny Plaintiff's claim for long-term disability benefits.

61. Defendant also notified Plaintiff that Plaintiff had exhausted her administrative remedies.

62. Defendant, in its final denial, discounted the opinions of Plaintiff's treating physicians, among others, and the documented limitations from which Plaintiff suffers including the effects of Plaintiff's impairments on her ability to engage in work activities.

63. The Plan gave Defendant the right to have Plaintiff submit to a physical examination at the appeal level.

64. A physical examination, with a full file review, provides an evaluator with more information than a medical file review alone.

65. More information promotes accurate claims assessment.

66. Despite having the right to a physical examination, Defendant did not ask Plaintiff to submit to one.

67. Plaintiff has now exhausted her administrative remedies, and her claim is ripe for judicial review pursuant to 29 U.S.C. § 1132.

## MEDICAL FACTS

68. Plaintiff suffers from multiple medical conditions resulting in both exertional and nonexertional impairments.

69. Plaintiff suffers from pemphigus vulgaris; constant fatigue; frequent headaches; and impaired cognitive functioning with poor short-term memory and limited attention and concentration.

70. Treating physicians document continued chronic pain, as well as weakness.

71. Plaintiff's treating physicians have opined that Plaintiff is unable to work.

72. Plaintiff's treating physicians disagree with Defendant's hired peer reviewers.

73. Plaintiff's disorders have resulted in restrictions in activity and have significantly curtailed her ability to engage in any form of exertional activity.

74. Physicians have prescribed Plaintiff with multiple medications in an effort to address her multiple symptoms.

75. However, Plaintiff continues to suffer from breakthrough pain, discomfort, and limitations in functioning, as documented throughout the administrative record.

76. Plaintiff's documented pain is so severe that it impairs her ability to maintain the pace, persistence and concentration required to maintain competitive employment on a full-time basis, for an 8-hour day, day after day, week after week, month after month.

77. Plaintiff's medications cause additional side effects in the form of sedation and cognitive difficulties.

78. The aforementioned impairments and their symptoms preclude Plaintiff's performance of any work activities on a consistent basis.

79. As such, Plaintiff has been and remains disabled per the terms of the Plan and has sought disability benefits pursuant to said Plan.

80. However, after exhausting her administrative remedies, Defendant persists in denying Plaintiff her rightfully owed disability benefits.

**DEFENDANT'S CONFLICT OF INTEREST**

81. At all relevant times, Defendant has been operating under an inherent and structural conflict of interest as Defendant is liable for benefit payments due to Plaintiff

and each payment depletes Defendant's assets.

82. Defendant's determination was influenced by its conflict of interest.

83. Defendant's reviewing experts are not impartial.

84. Upon information and belief, Defendant's peer reviewers have conducted reviews in connection with numerous other individuals insured by Defendant.

85. Defendant knows, or has reason to know, that its in-house medical consultants and the medical consultants hired and/or retained to complete file reviews serve only insurance companies and never individual claimants.

86. Upon information and belief, Defendant pays substantial sums of money to its medical consultants, whether in-house or independent contractors, to conduct reviews for claimants under Defendant's Plan(s).

87. Upon information and belief, Defendant's reviewing experts receive financial incentive to proffer opinions aiding in Defendant's denial of claims.

88. Defendant has failed to take active steps to reduce potential bias and to promote accuracy of its benefits determinations.

**COUNT I:**

**WRONGFUL DENIAL OF BENEFITS UNDER ERISA, 29 U.S.C. § 1132**

89. Plaintiff incorporates those allegations contained in paragraphs 1 through 88 as though set forth at length herein.

90. Defendant has wrongfully denied disability benefits to Plaintiff in violation of Plan provisions and ERISA for the following reasons:

a. Plaintiff is totally disabled, in that she cannot perform the material duties of

her own occupation, and she cannot perform the material duties of any other occupation which her medical condition, education, training, or experience would reasonably allow;

b. Defendant failed to afford proper weight to the evidence in the administrative record showing that Plaintiff is totally disabled;

c. Defendant's interpretation of the definition of disability contained in the policy is contrary to the plain language of the policy, as it is unreasonable, arbitrary, and capricious; and

d. Defendant has violated its contractual obligation to furnish disability benefits to Plaintiff.

**COUNT II: ATTORNEY FEES AND COSTS**

91. Plaintiff repeats and realleges the allegations of paragraphs 1 through 90 above.

92. By reason of the Defendant's failure to pay Plaintiff benefits as due under the terms of the Plan, Plaintiff has been forced to retain attorneys to recover such benefits, for which Plaintiff has and will continue to incur attorney's fees. Plaintiff is entitled to recover reasonable attorney's fees and costs of this action, pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. §1132(g)(1).

WHEREFORE, **Plaintiff demands judgment for the following:**

A. Grant Plaintiff declaratory relief, finding that she is entitled to all past due long-term disability benefits yet unpaid;

B. Order Defendant to pay past due long-term disability benefits retroactive to

July 18, 2022 through the present in the monthly amount specified in the Plan and subject to such offsets as are permitted in the Plan, plus pre-judgment interest;

C. Order Defendant to remand claim for future administrative review and continue to make future long-term disability benefits in the monthly amount specified in the Plan and subject to such offsets as are permitted in the Plan until such time as Defendant makes an adverse determination of long-term disability consistent with ERISA and Plaintiff's entitlements under the Plan;

D. Order Defendant to pay for the costs of this action and Plaintiff's attorney's fees, pursuant to Section 502(g) of ERISA, 29 U.S.C. § 1132(g); and

E. For such other relief as may be deemed just and proper by the Court.

Dated: November 13, 2024

Respectfully submitted,

/s/ Adriana M. de la Torre
Adriana M. de la Torre
Florida Attorney No. 1023227
Illinois Attorney No. 6289335
Tower Law Group
3505 Lake Lynda Drive, Suite 200
Orlando, FL 32817
Tel: (317) 353-3826
Fax: (877) 860-2750
Email: adriana@towerlawgroup.com

Attorney for Plaintiff,
Rolfie Fobbs

MARC WHITEHEAD & ASSOCIATES,
ATTORNEYS AT LAW L.L.P.
Selina Valdez

Tex. Bar No. 24121872
Fed. I.D. No. 3633062
selina@marcwhitehead.com
403 Heights Boulevard
Houston, Texas 77007
Telephone: 713-228-8888
Facsimile: 713-225-0940
*Pro Hac Vice Admission Pending*